UNITED CAROLINA BANK v. FIRST UNION NATIONAL BANK

No. 9113SC1274

(Filed 2 March 1993)

1. **Banks and Other Financial Institutions § 84 (NCI4th)— undorsed check—final payment—presentment warranty of good title—breach by collecting bank**

A collecting bank breached the presentment warranty of good title by obtaining final payment from the payor bank on a check containing no payee indorsement. The payor bank made final payment on the check to the collecting bank when it completed the process of posting the item to the payor's account, made a provisional settlement for the item, and failed to revoke the settlement in the time and manner permitted by N.C.G.S. § 25-4-301(1). N.C.G.S. § 25-4-207(1)(a).

**Am Jur 2d, Banks § 403.**

2. **Banks and Other Financial Institutions § 81 (NCI4th)— presentment warranty of good title—bank's indorsement for customer—payee not bank customer**

Assuming arguendo that the collecting bank could have cured its breach of warranty of presentment of good title by supplying the missing indorsement of its "customer" on a check pursuant to N.C.G.S. § 25-4-205(1) after the check was returned by the payor bank, the collecting bank did not do

UNITED CAROLINA BANK v. FIRST UNION NATIONAL BANK

[109 N.C. App. 201 (1993)]

so where the payee had no account at the collecting bank and was thus not a "customer" of the bank.

**Am Jur 2d, Banks § 700.**

**Construction and application of UCC sec. 4-205(1) allowing depository bank to supply customer's indorsement on item for collection. 29 ALR4th 631.**

3. **Banks and Other Financial Institutions § 84 (NCI4th) — breach of presentment warranty of good title — unilateral charge back — offsetting claims by payor and collecting banks**

    The payor bank's right to recover against the collecting bank for breach of the presentment warranty of good title does not negate the final payment made by the payor bank to the collecting bank, and the payor bank may not unilaterally charge the check back to the collecting bank on breach of warranty grounds but must seek a recovery against the collecting bank. While the collecting bank was entitled to recover on its claim that the payor bank unlawfully charged back the check to the collecting bank's account, the payor bank was entitled to recover on its counterclaim for breach of warranty, and the trial court properly held that these claims were offsetting in this case where neither party argued that the trial court failed to correctly account for any interest due.

    **Am Jur 2d, Banks § 404.**

    **Construction and effect of UCC article 4, dealing with bank deposits and collections. 18 ALR3d 1376.**

Appeal by plaintiff from judgment entered 11 June 1991 in Brunswick County Superior Court by Judge Gregory A. Weeks. Heard in the Court of Appeals 3 December 1992.

*Prevatte, Prevatte & Campbell, by Kenneth R. Campbell and James R. Prevatte, Jr., for plaintiff-appellant.*

*Marshall, Williams & Gorham, by Lonnie B. Williams, and First Union Corporation Legal Division, by Staff Attorney Barbara J. Hellenschmidt, for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals from an 11 June 1991 judgment of the trial court, sitting without a jury, granting defendant's motion to dismiss

made at the close of plaintiff's evidence pursuant to N.C.G.S. § 1A-1, Rule 41(b), on the ground that plaintiff established no right to relief.

The evidence before the trial court established that on 29 March 1989, Mary S. Wood (Wood) drew a check on defendant First Union National Bank (First Union) in the amount of $23,000.00 payable to the order of Eagle Construction Company. Jack S. Allen and Sylvia P. Allen were partners of Eagle Construction Company. On 3 April 1989, Jack Allen deposited the check with plaintiff United Carolina Bank (UCB) to the account of Sylvia P. Allen, No. 43-541-009-1. The check was not indorsed by payee Eagle Construction Company or by Sylvia or Jack Allen. At the time the check was deposited, Eagle Construction Company did not have an account at UCB. UCB gave immediate credit for the check to the Sylvia Allen account, and by 4 April 1989, Sylvia Allen had withdrawn the entire $23,000.00 from the account.

UCB sent the check through the Federal Reserve System, and on 4 April 1989, it was presented to payor First Union. Upon presentment to First Union, the check still contained no payee indorsement. UCB, however, had stamped on the back of the check, "United Carolina Bank, Monroe, N.C., pay any bank, P.E.G." ("P.E.G." meaning "prior endorsements guaranteed"). First Union posted the check to Wood's account and credited UCB's settlement account in the amount of $23,000.00. First Union sent the check to Wood with her monthly bank statement on 10 May 1989, whereupon she discovered the missing indorsement, returned the check to First Union, and asked First Union to credit her account in the amount of $23,000.00.

On 10 May 1989, First Union credited Wood's account in the amount of $23,000.00. First Union returned the check to UCB for lack of indorsement and debited UCB's settlement account in the amount of $23,000.00. On 12 May 1989, Wood issued to First Union a stop-payment order on the check. Upon receiving the check from First Union on 11 May 1989, UCB called Jack Allen to tell him that he needed to indorse the check. Jack Allen authorized UCB to indorse the check for him and to redeposit it. A UCB employee wrote on the back of the check "Eagle Construction Co., Deposit only to payee account 43-5410091 Sylvia P. Allen," and UCB sent the check back to First Union for payment. Upon receiving the

check on 16 May 1989, First Union honored Wood's stop-payment order and refused payment to UCB.

After First Union refused payment on the check, UCB brought the present action alleging that First Union "wrongfully had the check charged back against [UCB] after making final payment, and [First Union] is accountable to [UCB] under the provisions of N.C.G.S. Chapter 25." In its answer, First Union denied liability to UCB based in relevant part on UCB's alleged breach of presentment warranty of good title under N.C.G.S. § 25-4-207 and asserted in the alternative a counterclaim against UCB on the same basis. The matter was heard in Brunswick County Superior Court by Judge Gregory Weeks sitting without a jury on 10 June 1991, and at the close of UCB's evidence, First Union made a Rule 41(b) motion to dismiss plaintiff's complaint.

Judge Weeks after making findings of fact concluded in relevant part that UCB breached its warranties and guarantee of prior indorsement "by the lack of indorsement by the payee and the lack of good title in UCB," and that therefore "payment by First Union did not become final and First Union properly honored the stop payment order." The court also concluded that, if payment had become final, First Union nonetheless would be entitled to recover from UCB the amount of the check for breach of presentment warranties and guarantee of prior indorsement by UCB and could do so by returning the check to UCB and charging the check back to UCB. Finally, Judge Weeks concluded that UCB was without authority to supply the indorsement of Eagle Construction Company.

---

The dispositive issues are, under Chapter 25 of the North Carolina General Statutes, (I) whether UCB breached the presentment warranty of good title by obtaining payment from First Union on a check containing no payee indorsement; if so, (II) whether UCB cured its breach of warranty by supplying the indorsement of Eagle Construction Company before re-presenting the check for payment; and, if not, (III) whether UCB's breach of warranty entitled First Union to charge back to UCB the amount of the check.

A defendant in an action being tried without a jury may test the sufficiency of the plaintiff's evidence by moving at the close of plaintiff's evidence under N.C.G.S. § 1A-1, Rule 41(b) for involuntary dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *Tanglewood Land Co. v.*

*Wood,* 40 N.C. App. 133, 136, 252 S.E.2d 546, 549 (1979); W. Brian Howell, *Howell's Shuford North Carolina Civil Practice and Procedure* § 41-5 (4th ed. 1992). In ruling on a Rule 41(b) motion, the trial court must determine "whether the plaintiff's evidence, taken as true, would support findings upon which the trier of facts could properly base a judgment for the plaintiff." *Howell* at § 41-5.

I

**[1]** UCB argues that the trial court erroneously concluded that UCB breached the presentment warranty of good title by obtaining payment of the Wood check from First Union when the check did not contain the indorsement of the payee. Specifically, UCB argues that "the true test of whether one has good title to an instrument lies in how he came into possession of it, and not in the presence or absence of indorsements." We disagree.

Pursuant to N.C.G.S. § 25-4-207, each "collecting bank who obtains payment" of a check from a payor bank "warrants to the payor bank . . . that . . . he has good title" to the check. N.C.G.S. § 25-4-207(1)(a) (1986). This is known as a presentment warranty of good title whereby the collecting bank warrants that the check contains neither forged indorsements, *North Carolina Nat'l Bank v. Hammond,* 298 N.C. 703, 708, 260 S.E.2d 617, 621 (1979), nor missing indorsements. *See Witten Prods., Inc. v. Republic Bank & Trust Co.,* 102 N.C. App. 88, 90, 401 S.E.2d 388, 390 (1991) (indorsement of the payee is required in order to pass good title); *Chilson v. Capital Bank,* 701 P.2d 903, 906 (Kan. 1985) (collecting bank breached Article Four presentment warranty of good title by receiving final payment on check with missing payee's indorsement); *accord Stapleton v. First Sec. Bank,* 675 P.2d 83 (Mont. 1983). Indeed, it is well established that this presentment warranty of good title, guaranteeing prior indorsements, applies "regardless of the type of indorsement *or whether there was an indorsement.*" N.C.G.S. § 25-4-207 N.C. comment (emphasis added).

In this case, it is undisputed that the indorsement of the payee was missing when First Union initially received the check for payment. Therefore, if final payment was obtained by UCB, the collecting bank, from First Union, the payor bank, UCB breached the presentment warranty of good title. *See James J. White & Robert S. Summers, Uniform Commercial Code* § 17-2, at 722 (3d ed. 1988) (presentment warranty arises only when the collecting bank receives from the payor bank final payment for the check). Final payment

of a check by a payor bank occurs when the payor bank has done any of the following, whichever happens first:

(a) paid the item in cash; or

(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or

(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or

(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.

Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.

N.C.G.S. § 25-4-213(1) (1986).

It is undisputed that First Union made final payment on the check. The evidence before the trial court established that First Union completed the process of posting the item to Wood's account and that First Union made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, that is, before its midnight deadline. N.C.G.S. § 25-4-301(1) (1986); N.C.G.S. § 25-4-104(1)(h) (1986). Thus, because UCB presented the check to First Union without the required indorsement and because First Union paid the check under Section 25-4-213(1), Judge Weeks properly concluded that UCB, as a collecting bank, breached its presentment warranty of good title. We note, however, that the stamp which UCB placed on the back of the check, "P.E.G.," does not affect UCB's liability for breach of warranty. A specific guarantee of prior indorsements is not necessary under the UCC because, as previously discussed, the effect obtained by such words now arises automatically under the Code as a part of the bank collection process. N.C.G.S. § 25-4-207(3) & official comment 2; Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks* § 12.10 (6th ed. 1987 & Supp. 1992). In fact, the use of P.E.G. stamps by banks is discouraged as it "make[s] it more difficult to read the bank indorsements and identify the depositary bank in the event that the check is returned unpaid." *Id.*

UNITED CAROLINA BANK v. FIRST UNION NATIONAL BANK

[109 N.C. App. 201 (1993)]

## II

**[2]** UCB argues that any breach of the presentment warranty of good title was cured when UCB supplied the missing indorsement after the check was returned by First Union. We acknowledge that a depositary bank such as UCB which has taken a check for collection may supply the indorsement of its "customer." N.C.G.S. § 25-4-205(1) (1986). In this case, however, assuming *arguendo* that UCB could have cured the breach of warranty by supplying the proper indorsement, UCB did not do so. Eagle Construction Company, the payee of the check, did not have an account at UCB and therefore was not a "customer" within the meaning of Section 25-4-205(1). *See* N.C.G.S. § 25-4-104(1)(e) (1986) ("customer" is any person having an account with the bank). Accordingly, we again agree with Judge Weeks that the indorsement provided by UCB was without effect and could not cure the breach of warranty.

## III

**[3]** UCB finally argues that even if it breached the presentment warranty of good title, First Union became accountable for the check upon final payment and could not charge the check back to UCB. In support of its argument, UCB directs our attention to Section 25-4-213(1) which provides that, except for certain exceptions not here applicable, "upon final payment, the payor bank shall be accountable" for the amount of the check. First Union argues, based on N.C.G.S. § 25-3-418, that because UCB breached the presentment warranty of good title, payment of the check was not final and that, after discovering the missing indorsement, First Union had the legal right to return the check and to charge the amount of the check back to UCB.

North Carolina Gen. Stat. § 25-3-418 in relevant part provides that

> *except for liability for breach of warranty on presentment* under the preceding section [GS 25-3-417], [and under GS 25-4-207] payment . . . of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.

N.C.G.S. § 25-3-418 & N.C. comment (1986) (emphasis added). This statute, on its face, seems to suggest that First Union is correct in its argument, that is, that a breach of warranty by the collecting bank prevents payment of a check by a payor bank from becoming

final. Because, however, the warranties under Section 25-4-207(1) arise *only* when there has already been final payment of the check, it defies logic to assert that when a breach of presentment warranty exists, payment of the check is not final. In addition, although under Section 25-4-207(4) a payor bank may "make a claim" within a reasonable time for breach of warranty, there is no explicit or implied provision in the Code authorizing a payor bank to unilaterally charge back to the collecting bank on breach of warranty grounds the amount of a check after the payor bank has "finally paid" the check under Section 25-4-213(1). Finally, other jurisdictions addressing the question before us have concluded, and we agree, that UCC Section 3-418 operates as an exception to the final payment rule in Section 4-213(1) only to the extent that it permits the payor bank which has made final payment to seek a recovery against the collecting bank for breach of presentment warranties. *See, e.g., First Nat'l Bank of Arizona v. Continental Bank*, 673 P.2d 938, 941 (Ariz. Ct. App. 1983). Damages in such an action include the consideration received by the collecting bank and finance charges and expenses related to the check, if any. N.C.G.S. § 25-4-207(3).

In sum, First Union's right to recover for breach of presentment warranties does not undo or negate the final payment made by First Union to UCB under Section 4-213(1). To read Section 25-3-418 as doing so "would be to introduce a great amount of uncertainty to the finality of payment rule in any case where the [i]ndorsements are questioned." *First Nat'l*, 673 P.2d at 941. Accordingly, the trial court was incorrect in determining that First Union had the right to unilaterally charge the check back to UCB. The trial court, however, was correct in its alternative ruling that First Union was entitled to judgment on its counterclaim for breach of the presentment warranty of good title. In other words, although UCB is entitled to recover on its claim that First Union unlawfully charged back the check to UCB's account, First Union is entitled to recover on its claim against UCB for breach of warranty. The trial court determined that these were offsetting claims. Although both parties in their pleadings sought recovery of interest on the $23,000.00, neither UCB nor First Union argues before this Court that the trial court failed to properly account for any interest due. Thus, we deem the interest claim abandoned by the parties. N.C.R. App. P. 28(a) (1992). Therefore, we agree that the parties' claims are offsetting and, accordingly, the order of the trial court is

Affirmed.

Chief Judge ARNOLD and Judge COZORT concur.